# In the United States Court of Federal Claims

No. 13-1023C

Filed: March 5, 2018

*****************************************
|   |   |
|---|---|
| MW BUILDERS, INC. f/n/a/ MW BUILDERS OF TEXAS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Rules Of The United States Court Of Federal Claims 52(b) (Amended Or Additional Findings); 59(a) (Grounds For New Trial Or Reconsideration; Further Action After Trial); 59(e) (Motion To Alter Or Amend Judgment); Tucker Act Jurisdiction, 28 U.S.C. § 1491 (2012). |

*****************************************

**Paul Harvey Sanderford,** Sanderford and Carroll, P.C., Temple, Texas, Counsel for Plaintiff.

**Alexander Orlando Canizares,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

**BRADEN**, *Chief Judge*.

On September 29, 2017, the court issued a Post-Trial Memorandum Opinion And Final Order that granted partial judgment in favor of MW Builders, Inc. ("MW Builders"), but determined that the claims of MW Builders' subcontractor, Bergelectric, were waived. *See MW Builders, Inc. v. United States*, 134 Fed. Cl. 469, 531 (Fed. Cl. 2017). On October 27, 2017, MW Builders filed a Motion For Reconsideration And To Alter Or Amend Judgment, pursuant to Rules of the United States Court of Federal Claims ("RCFC") 52(b) and 59(a), requesting that the court reconsider the determination that Bergelectric's pass-through claims were waived.[1] ECF No. 141. Although a detailed factual history of this case can be found in the court's September 29, 2017

---

[1] The October 27, 2017 Motion For Reconsideration And To Alter Or Amend Judgment is captioned as one filed, pursuant to RCFC 59(e) and 52(b). RCFC 59(e) refers only to the timing for filing a motion to alter or amend a judgment. Because the October 27, 2017 Motion For Reconsideration And To Alter Or Amend Judgment cites RCFC 59(a), that governs motions for reconsideration, the court considers the motion as one for reconsideration or, in the alternative, to amend the judgment.

Post-Trial Memorandum Opinion And Final Order, *MW Builders, Inc.*, 134 Fed. Cl. at 476–88, the court provides a brief overview of the factual findings relevant to MW Builders' Motion For Reconsideration And To Alter Or Amend Judgment, below.

## I. BACKGROUND.

As discussed in the September 29, 2017 Post-Trial Memorandum Opinion And Final Order, MW Builders entered into a subcontract with Bergelectric to "provide a complete Electrical System in accordance with [the Contract] plans and specifications." *MW Builders*, 134 Fed. Cl. at 479. The subcontract also required Bergelectric to provide temporary power to the project site, prior to the installation of permanent power. *Id.* (citing JX 9 at 14). To receive payment under the subcontract, Bergelectric was required to sign periodic lien waivers and releases and submit them to MW Builders, together with applications for payment. *Id.* (citing DX 124; TR 672).

The lien waivers and releases that Bergelectric signed and executed when it requested progress payments from MW Builders stated:

> NOW, THEREFORE, effective as of receipt of the payment referenced in this Application, the undersigned [Bergelectric] irrevocably and unconditionally releases and waives any and all mechanic's liens or other liens against the Realty or any other claims on any bonds *or any other claims whatsoever in connection with this Contract and with the Realty through the end of the period covered by this Application*, reserving however, all lien rights for materials and labor furnished or performed after said period and hold the Beneficiaries and their respective successors and assigns harmless against any lien, bond, claims or suits in connection with the materials, labor, and everything else in connection with this Contract, except with respect to the retainages to date, if any.

*Id.* at 511 (quoting DX 124 at 2) (emphasis added).

The lien waiver and release language, however, contains no express reservation authorizing Bergelectric to pass through claims for payment against the Government and Bergelectric signed waivers covering the entire period of permanent power delay, *i.e.*, from March 13, 2012 to September 26, 2012. *See id.* (citing DX 124 at 2, 4, 6, 8, 10, 16, 18).

Therefore, in the September 29, 2017 Post-Trial Memorandum Opinion and Final Order, the court determined that the lien waivers contained a general release whereby Bergelectric "irrevocably and unconditionally" waived "any . . . claims whatsoever in connection with th[e] Contract" through the end of "the period covered by this Application." *Id*. As a matter of law, the United States Court of Appeals for the Federal Circuit has held that, "absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release." *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir. 1999). At trial, MW Builders and Bergelectric proffered extrinsic evidence to demonstrate that they did not intend to include the pass-through claims in the release. *See MW Builders*, 134 Fed. Cl. at 512. The court, however, did not consider the extrinsic evidence relevant in construing the release language. *Id.* (citing *Augustine Med.*, 194 F.3d at 1373).

On reconsideration, MW Builders argues that the court's determination that Bergelectric waived pass-through claims was "a manifest error," because "the [c]ourt failed to consider the applicable case law requiring consideration of the evidence offered at trial regarding Bergelectric and MW Builders' lack of intent to waive Bergelectric's pass-through claim in the progress releases." ECF No. 141 at 1.

## II. STANDARD OF REVIEW.

Pursuant to RCFC 59, the court may reconsider and alter or amend its judgment, if the movant can show: (1) that there has been an intervening change in controlling law; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. *See* RCFC 59; *see also Dairyland Power Co-op v. United States*, 106 Fed. Cl. 102, 104 (Fed. Cl. 2012). A motion for reconsideration is not intended to give an "unhappy litigant an additional chance to sway" the court. *See Matthews v. United States*, 73 Fed. Cl. 524, 526 (Fed. Cl. 2006). Nor may a party prevail on such a motion by raising an issue for the first time on reconsideration, when the issue was ripe for adjudication at the time the complaint was filed. *Id.* Although the court has considerable discretion in ruling on a motion for reconsideration, granting relief requires "a showing of extraordinary circumstances." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 826 (2005); *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

## III. DISCUSSION.

### A. MW Builders' Argument.

MW Builders argues that the court's reliance on *Augustine* is misplaced, because "that case was decided based on very different facts[,]" *i.e.*, the parties in that case were disputing a settlement agreement. ECF No. 141 at 3–4. In this case, Bergelectric and MW Builders agree that the release language at issue "was never intended to bar Bergelectric's pass-through claim, and the parties' subsequent conduct validates that intent." ECF No. 141 at 4. Therefore, the court should have considered the extrinsic evidence proffered by MW Builders and Bergelectric to demonstrate that the parties did not intend to waive Bergelectric's pass-through claims. ECF No. 141 at 5–6.

In the alternative, MW Builders asks the court to reform the release language. ECF No. 141 at 4. MW Builders relies on a number of United States Court of Claims cases in support of the request for reformation. ECF No. 141 at 4–5 (citing *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 806–07 (Ct. Cl. 1963) (holding that an executed release did not bar a claim, where both parties continued to consider the claim after the release had been executed); *Colonial Navigation Co. v. United States*, 149 Ct. Cl. 242, 246 (Ct. Cl. 1960) (holding that a general release did not bar a claim where there was no indication of an intent to release a given obligation that "no one would intend to give away or bargain away without any mention or discussion"); *Nippon Hodo Co., Ltd. v. United States*, 142 Ct. Cl. 1, 4 (Ct. Cl. 1958) ("This court, under its jurisdiction over claims founded upon contracts with the United States, has and frequently uses the power of a court of equity to reform contracts so that they conform to the intention of the parties, if the evidence shows that reformation is necessary."); *Winn-Senter Constr. Co. v. United States*, 110 Ct. Cl. 34, 65–66 (Ct. Cl. 1948) (holding that an executed release did not bar a claim, where the Government continued to consider a claim thereafter and the conduct of both parties evidenced that they did

not construe the release as abandoning the claim); *E.W. Bliss Co. v. United States*, 70 Ct. Cl. 176, 202 (Ct. Cl. 1930) ("It is so apparent that this release then signed was not intended to have any effect upon the pending claim for increased labor costs that there could be no justification for giving it any such application at this time."); *L.W. Packard & Co. v. United States*, 66 Ct. Cl. 184, 192–93 (Ct. Cl. 1928) ("If it was included by the terms of the settlement it is clearly a mutual mistake, and the settlement contract may be reformed. This, we think, is unnecessary. We need not cite authorities to sustain the fact that a receipt or release, however conclusive in its terms, is subject to explanation as to the subject matter of the accord and satisfaction.")). MW Builders also cites *Metric Constructors, Inc. v. United States*, 314 F.3d 578, 584 (Fed. Cir. 2002), for the proposition that partial releases do not bar pass-through claims against the Government, where the parties did not intend to release pass-through claims. ECF No. 141 at 4.

In sum, "[b]ased on the [c]ourt's failure to consider the above cases and the application to this specific issue, the [c]ourt also wrongly ignored the evidence relating to Bergelectric's and MW Builders' intent with respect to the progress payment releases." ECF No. 141 at 5.

### B. The Court's Resolution.

Where the terms of a release are "clear and unambiguous, they must be given their plain meaning—extrinsic evidence is inadmissible to interpret them. . . . A contract provision is only ambiguous if susceptible to more than one reasonable meaning." *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375–76 (Fed. Cir. 2004). For this reason, MW Builders' reliance on *Metric Constructors* is misplaced. In that case, the subcontractor executed a series of lien waivers and releases in connection with partial payments for work performed under the subcontract. *Id.* at 580. The text of those releases stated that the subcontractor released the prime contractor "and the owners of the project from all claims whatsoever arising out of or relating to the subcontract or purchase order *to the extent of payments actually received*." *Id.* (emphasis added). The trial court determined that the final lien waiver and release constituted a full release of the prime contractor and the Government from any liability under the contract, because the language was unambiguous. *Id.* at 582. But, the United States Court of Appeals for the Federal Circuit reversed, holding that the qualifying language, *i.e.*, "to the extent of payments actually received," was ambiguous and tracked a Florida statute that governed construction liens requiring that: "in the event a progress payment [was] not sufficient to pay all the lienors' claims for the work covered by the partial payment, the lienors [were] to execute partial releases to the extent of the payments made to them." *Id.* at 582–83. The Florida statute also provided different procedures for executing final and partial releases. *Id.* at 583. Therefore, the Federal Circuit held, the lien waiver and release language was sufficiently ambiguous to justify the admission of extrinsic evidence. *Id.*

Unlike the lien waiver and release in *Metric Constructors*, MW Builders' and Bergelectric's lien waiver and release contained an irrevocable and unconditional waiver of "*any other claims whatsoever in connection with this Contract and with the Realty through the end of the period covered by this Application*." DX 124 at 2 (emphasis added). Rather than releasing claims, to the extent payments were received, MW Builders' and Bergelectric's lien waiver and release expressly reserved only those claims arising after the date of the Application for Payment. DX 124 at 2. No right to pass through Bergelectric's claim to the Government existed, nor was reserved. DX 124 at 2. As such, the court determined that the release language unambiguously

"waive[d] all of Bergelectric's claims against MW Builders and any related pass-through claims against the Army Corps." *MW Builders*, 134 Fed. Cl. at 512. Therefore, extrinsic evidence was not relevant, required, nor admissible to interpret the text of the release. *See Barron Bancshares,* 366 F.3d at 1375–76.

MW Builders also contends that the other precedential decisions support the argument that, notwithstanding the unambiguous nature of the release, extrinsic evidence should be admissible to establish the parties' intent. But, the cases that MW Builders cites are distinguishable, because each involved a release executed between the contractor and the Government, not between the contractor and a subcontractor. *See J.G. Watts Constr. Co.*, 161 Ct. Cl. at 805; *Colonial Navigation Co.*, 149 Ct. Cl. at 245; *Nippon Hodo Co.*, 142 Ct. Cl. at 2; *Winn-Senter Constr. Co.*, 110 Ct. Cl. at 64–65; *E.W. Bliss Co.*, 70 Ct. Cl. at 195 (Ct. Cl. 1930); *L.W. Packard & Co.*, 66 Ct. Cl. at 191; *see also George Hyman Constr. Co. v. United States*, 30 Fed. Cl. 170, 175 n.7 (Fed. Cl. 1993) (determining that the cited cases do not provide authority for reforming a subcontract between private parties).

And, MW Builders fails to recognize that the United States Court of Federal Claims does not have jurisdiction to reform an agreement between a prime contractor and its subcontractor. The court's jurisdiction is limited to contract claims between a plaintiff and the Government. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon . . . any express or implied contract *with the United States*[.]" (emphasis added)). The court's equitable authority does not extend to reforming contracts between private parties. *See* 28 U.S.C. § 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, *the court may, as an incident of and collateral to any such judgment, issue orders* directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, *and such orders may be issued to any appropriate official of the United States.*" (emphasis added)); *see also Severin v. United States*, 99 Ct. Cl. 435, 442 (Ct. Cl. 1943) ("The subcontractor could not sue the Government since it has not consented to be sued except, so far as relevant to this case, for breach of contract. But the Government had no contract with the subcontractor, hence it is not liable to, nor suable by him."); *George Hyman Constr. Co.*, 30 Fed. Cl. at 174–75 ("The court is aware of no statutory basis for asserting jurisdiction over the release. Plaintiff has not cited, and the court has not found, any instance where this court has exercised authority to reform a private contract of this type."), *aff'd*, 39 F.3d 1197 (unpublished table decision).

For these reasons, the court has determined that MW Builders has not demonstrated that the court committed a manifest error of law.

## IV.   CONCLUSION.

For these reasons, MW Builders' October 27, 2017 Motion For Reconsideration And To Alter Or Amend Judgment is denied.

**IT IS SO ORDERED.**

                                            s/ Susan G. Braden
                                            **SUSAN G. BRADEN**
                                            **Chief Judge**